UNITED STATES of America ex rel.
Shelby STEWART, Petitioner,

v.

Walter REDMAN and the Attorney
General of the State of Delaware
Richard Wier, Respondents.

Civ. A. No. 78–332.

United States District Court,
D. Delaware.

March 1, 1979.

Shelby Stewart, pro se.

Francis A. Reardon, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for respondents.

OPINION

MURRAY M. SCHWARTZ, District Judge.

Shelby Stewart, a state prisoner incarcerated at Delaware Correctional Center in Smyrna, Delaware, has petitioned this Court for habeas corpus relief pursuant to 28 U.S.C. § 2254. He asserts six grounds of error in his state-court trial that resulted in a conviction and sentencing for attempted robbery in the first degree, attempted murder and conspiracy in the second degree and three counts of possession of a deadly weapon during the commission of a felony, one count for each felony of which he was convicted. All assertions of error were argued to the Delaware Supreme Court; hence, petitioner has exhausted his State remedies. *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). The respondents having filed a Motion to Dismiss accompanied by the state-court records, the petition is ripe for federal review. Although it is essential to grant the writ because of a violation of the Double Jeopardy Clause occasioned by consecutive sentences for the same offense, discussed more fully below, no trial error occurred that indicates the necessity of holding an evidentiary hearing. The claims of error are discussed below.

I. *Assertions of Error Relating to Arrests and Interrogation*

First, petitioner argues that his arrest was illegal because it was not sup-

ported by probable cause.[1] The probable cause for Stewart's arrest consisted almost entirely of the statements of his codefendant, whose confession implicated him in the nonfatal shooting of a police officer. Petitioner's Fourth Amendment rights were sufficiently protected by the existence of probable cause to make the arrest and by the presence of a warrant. *See United States v. Watson,* 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Gerstein v. Pugh,* 420 U.S. 103, 113, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). As the Supreme Court of Delaware observed on petitioner's appeal, *Fullman v. State,* 389 A.2d 1292 (Del. Sup.1978), because of their self-incriminating nature, confessions, if voluntary, carry built-in signs of reliability. Thus, the confession of Stewart's codefendant, Fullman, provided ample probable cause for the arrest of Stewart.

■ Second, Stewart argues that his statements uttered immediately subsequent to his arrest should have been suppressed because they were the direct product of a Sixth Amendment violation visited upon his codefendant, Fullman. Relying upon *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), petitioner claims that the police interrogation and tactics that culminated in Fullman's confession violated the latter's right to counsel. Although the Delaware Supreme Court ruled that his codefendant's confession was not obtained in violation of the latter's right to counsel, *Fullman v. State, supra,* this Court does not reach that question. Even if any deprivation of Fullman's Sixth Amendment rights occurred, petitioner Stewart would not have standing to complain of that deprivation vicariously, even if, as is undisputed, that violation led directly to Stewart's arrest. Although this Court is aware of no decision on the question whether the exclusionary rule applies to the use of evidence against a defendant obtained through the exploitation of statements obtained in violation of a codefendant's Sixth Amendment

rights, the Third Circuit has held that Fourth Amendment rights may not be vicariously asserted in *United States ex rel. Wright v. Cuyler,* 563 F.2d 627, 631 (3d Cir. 1977). Absent the possibility that evidence obtained thereby is unreliable, the application of the exclusionary rule to any constitutional violation, whether of the Fourth, Fifth or Sixth Amendments, merely provides deterrence to police misconduct. *Stone v. Powell,* 428 U.S. 465, 486–88, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Whether the exclusionary rule may be invoked vicariously should not be dependent upon the character of the antecedent constitutional violation visited upon another individual, at least in those cases where the trustworthiness of the evidence derived from the unconstitutional conduct is not questioned. Significantly, the petitioner does not challenge the factual reliability of Fullman's confession, he merely challenges the investigative tactics used in obtaining it. In light of the Supreme Court's decisions limiting the privilege of invoking the exclusionary rule to those defendants whose own rights have been violated, *see United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Alderman v. United States,* 394 U.S. 165, 171–72, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), and the Third Circuit's decision in *United States ex rel. Wright v. Cuyler, supra,* together with the absence of any allegation that Fullman's confession was unreliable and thus formed an incredible basis for probable cause, it is concluded that petitioner cannot complain of a Sixth Amendment violation, if any existed, suffered by his codefendant.

■ Related to this contention is petitioner's argument that his postarrest statements were improperly admitted into evidence. Petitioner, however, does not assert any violation of his constitutional rights relative to his confession; he merely recounts that after his initial refusal to give a statement, the police informed him of Full-

---

1. He also alleges that an affidavit alleged to have been required under Delaware Superior Court Rule 4(a) was absent. To the extent that Stewart presses an infraction of State law by

the absence of the affidavit, he has not alleged an error capable of correction in federal court. 28 U.S.C. § 2254.

man's statements implicating him and he confessed. No charge is made that he was not given *Miranda* warnings or that his confession was made after threats or coercion were brought to bear upon him. Nor does he claim that he was denied counsel. Without any assertion of unconstitutional conduct, it must be concluded that Stewart's statements were legally obtained and legally admitted into evidence against him. *See Wong Sun, supra.*

## II. *Constitutionality of Victim's In-Court Identification of Defendant*

█  Third, petitioner complains that the victim's in-court identification of him as one of the assailants was so suggestive as to deny due process. The police officer only viewed the defendant at the time of the shooting for a few seconds; subsequently, no pretrial identification procedures were conducted by the police: the victim attended no line-ups and viewed no photo arrays. His in-court identification of the defendants occurred approximately six months after the shooting. The petitioner argues that the victim's in-court identification of two defendants while they sat at counsel's table was inherently suggestive.

It is obvious that an in-court identification, preceded by neither line-up nor photo array, is every bit as suggestive as a pretrial show-up. *See Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In considering this worthy argument, courts have focused, however, on the presence of counsel at the in-court identification, and the latter's ability to probe into the reliability of witness' recollection before the trier of fact, as providing ample protection against the possibility of misidentification:

> It might well be argued that the deeply-rooted practice of allowing witnesses to identify the defendant in open court is no less a suggestive show-up than those condemned by [*Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969)]. But we decline to take the giant step of hold-

ing in-court identifications inadmissible. It is a sufficient safeguard that the accused be allowed to question the weight to be given the 'in-court' identification considering the length of time the witness saw the perpetrator of the crime, the elapsed time between the act and the trial, and the fact that the witness had made no other identification of the defendant.

*United States v. Hamilton,* 469 F.2d 880, 883 (2d Cir. 1972).

On review of the denial of a habeas corpus petition, the Third Circuit Court of Appeals took a similar approach to the identification by two witnesses of the defendant at his preliminary hearing in *United States ex rel. Riffert v. Rundle,* 464 F.2d 1348 (1972). Recognizing "the inherent suggestiveness of any one-to-one identification," the Court ruled that "any identification initially made at a judicial proceeding, should be kept, wherever possible, within the formal context of that proceeding." *Id.* at 1350. Because the presence and participation of counsel assured thorough and well-informed cross-examination at both the preliminary hearing and later at trial, the Court held that no violation of due process had occurred. *Id.* The trial transcript reveals that, prior to the victim's identification, a voir dire was held outside the presence of the jury during which petitioner's counsel was offered and took advantage of an opportunity to question the witness regarding the length and quality of his prior encounters with the defendant and the state of his recollection respecting them. Further, when the jury returned and the victim identified the defendant for the second time, counsel again probed extensively into the identification before the jury. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), entitling an accused to the presence of counsel at a line-up, indicates that counsel's informed participation at the proceeding provides sufficient protection against a suggestive identification. Short of demanding the institution of pretrial identifications as a constitutional matter, which the Court declines to do, it is at a loss to determine how

defendant could have been better protected against a possible misidentification. Petitioner is not entitled to relief because of the in-court identification.

### III. *Failure to Charge on Lesser Included Offense*

■■ Petitioner's fourth claim of error is aimed at the trial court's failure to charge the jury on the lesser included offense. The court instructed on attempted robbery in the first degree but not attempted robbery in the second degree. Petitioner's claim is without merit. As the petitioner observes, robbery in the second degree requires "the use of force upon another person with intent to prevent or overcome the resistance to the taking of property." 11 *Del.C.* § 831. Although those elements were clearly satisfied by the State's proof, the Supreme Court of Delaware held in petitioner's appeal that the use of a deadly weapon, such as the rifle used in the perpetration of this crime and mentioned in the robbery count of the indictment, elevates the crime from second-degree robbery to first-degree. Only under certain very limited circumstances not present here may the statutory construction of the highest State court be reexamined in a collateral proceeding in federal court. *Hallowell v. Keve,* 555 F.2d 103, 107 (3d Cir. 1977).[2] Since the use of a deadly weapon was undisputed, no evidence in the case justified an instruction on second-degree robbery. *See Fullman v. State, supra,* 389 A.2d at 1300 (Del.1978). "Neither due process nor any other constitutional guarantee is offended by a trial judge's refusal to charge the jury on a

matter not presented by the evidence." *Hallowell, supra.*

### IV. *Denial of Petitioner's Motion for a Severance*

■ The petitioner also complains that the State trial court erred in denying his application for a severance because his own statement, edited to exclude any reference to his codefendant in conformity with *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), was placed into evidence.[3] He argues that the edited version was distorted because it created the impression that Stewart was supporting his codefendant, rather than attempting to disassociate his own culpability from that of Fullman's. Petitioner's complaint is found to be unavailing. No *Bruton* problems are raised because he objects to the admission of his own statement. Moreover, the denial of defense counsel's motion for a severance could not have resulted in a deprivation of petitioner's rights under the Due Process Clause since he took the stand and could correct on direct examination by his own testimony any distortion caused by the admission of the redacted statement into evidence.

### V. *Double Jeopardy Claim*

Although inartfully drafted, the petition makes a claim under the Fifth Amendment's Double Jeopardy Clause[4] which the Court finds to be meritorious and which will necessitate the granting of petitioner's writ unless he is resentenced by the State.

---

2. One of these exceptions to the broad rule arises when the question of identity of offenses is raised under the Double Jeopardy Clause. *See infra.* Another is when the record reflects that the construction placed upon the statute "appears to be an 'obvious subterfuge to evade consideration of the federal issue'." *Hallowell, supra.*

3. Since it is the admission of his own statement to which petitioner objects, this is not a case in which a nontestifying codefendant's confession redacted under *Bruton* nevertheless explicitly suggests the participation of the defendant, thus arguably raising Confrontation Clause is-

sues. *United States v. Belle,* 593 F.2d 487 at 493-494 (3d Cir. 1979) (en banc); *see Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

4. The petitioner's brief to the Supreme Court of Delaware and his petition to this Court for habeas relief focused upon the common-law doctrine of merger of offenses. Both, however, also invoked the Double Jeopardy Clause. Thus the issue was properly, although vaguely, framed for resolution by the highest State court, and indeed the latter held that no constitutional claim was raised by the consecutive sentences. *See infra.*

■ Upon petitioner's conviction, he was sentenced to six prison terms, to run consecutively: five years for attempted murder in the first degree, five years as to each weapons offense, three years as to attempted robbery in the first degree, and one year for conspiracy in the second degree.[5] The petitioner argues that the State court could not impose consecutive sentences for attempted robbery first degree and possession of deadly weapon during the commission of a felony, because both require identical elements and hence are the same offense under Delaware law, successive punishments for the same offense being barred by the Double Jeopardy Clause. Petitioner is correct that "where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

■ The crucial question, then, is whether, for purposes of the Double Jeopardy Clause, the two offenses are identical. Under the Supreme Court's formulation in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), two offenses are separate that distinct only if *each* contains an element the other offense does not. Delaware's weapons offense, codified at 11 *Del.C.* § 1447(a), requires proof of two facts: (1) possession of a deadly weapon, (2) during the commission of a felony. Robbery in the first degree, codified at 11 *Del.C.* § 832, requires, first, proof that a person is guilty of robbery in the second degree (11 *Del.C.* § 831), which under Delaware law is always a felony. Thus, the first element of the weapons offense and robbery in the first degree are the same: the commission of felony.

Under Delaware law, however, robbery in the second degree contains three alternative second elements. Section 832(1), causing physical injury to any person who is not a participant in the crime, would pose no double jeopardy problem in conjunction with the weapons offense since each would then contain a mutually exclusive element. Section 832(1) does not require proof that a deadly weapon was used, and it does require that the prosecution show that a nonparticipant was injured. The count of the indictment setting forth the robbery charge, however, precludes that alternative prong of § 832 because it charges that the defendants "did position themselves behind and reconnoiter . . . the place contemplated for the commission of the robbery, while armed with a .22 rifle to be employed to overcome the resistance to the taking of property." The indictment does not mention the injury caused to the police officer but does mention the deadly weapon and hence § 832(1) does not apply.

■ Either § 832(2) or § 832(3) do raise double jeopardy problems, however: both require proof that the defendant be armed with a deadly weapon, or in the case of § 832(3), a dangerous instrumentality. Conceivably, a dangerous instrumentality is not identical, under *Blockburger,* to a deadly weapon, *see United States v. Hearst,* 412 F.Supp. 877, 879 (N.D.Cal.1976), but this Court does not have to decide that troublesome question, since the robbery count of the indictment does not charge the use or threat of use of a dangerous instrumentality. Hence the only prong of § 832 that could have been charged under the indictment is § 832(2), requiring proof that the defendant was armed with a deadly weapon.[6] When a defendant is convicted of § 832(2) and § 1447(a), as petitioner was, he has been twice convicted for the same offense because no distinction in evidentiary proof exists between the weapons charge and the particular subsection of the first-degree robbery statute charged in petitioner's indictment.

5. Both the petitioner's indictment and his sentence, supplied in the State-court record, leave no question that each of the three weapons charges corresponded to each of the three felonies for which he was convicted and sentenced.

6. This Court can think of no evidentiary distinction between the words "armed with" of § 832(a) and "possession of" in § 1447(a).

The fact of dual convictions, however, is not constitutionally suspect, *see United States v. McDaniel,* 176 U.S.App. D.C. 60, 66, 538 F.2d 408, 414 (1976); *United States v. Hearst, supra,* as long as those convictions did not result from successive prosecutions. *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). It is the ordeal presented by either dual trials or dual sentences for the same offense that the Double Jeopardy Clause proscribes. *North Carolina v. Pierce,* 395 U.S. 711, 717, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969). Although for purposes of the Double Jeopardy clause, the statutory construction of the highest State court is not dispositive of whether two offenses are identical, *see Brown v. Ohio, supra*; note 2 *supra,* in petitioner's appeal the Supreme Court of Delaware recognized that the elements of § 832(2) and § 1447(a) were identical. *Fullman v. State, supra,* 389 A.2d at 1300. Notwithstanding its holding that the offenses possess identical elements, the Delaware Supreme Court reaffirmed prior holdings, *see Mackie v. State,* 384 A.2d 625 (1978); *State v. Honie,* 310 A.2d 872 (1973), that a violation of the Felon's Firearms Possession Act (§ 1447) constitutes a "separate, clear and unambiguous offense,"[7] and as such "may be prosecuted along with the [underlying] felony, and upon conviction of both, separate sentences may be imposed without violating any constitutional proscriptions." *Fullman v. State, supra,* 389 A.2d at 1300.[8] Recent decisions of the United States Supreme Court, however, in particular *Brown v. Ohio, supra,* make clear that the Fifth Amendment leaves no discretion to impose consecutive sentences on identical statutory offenses. Accordingly, the petitioner cannot serve consecutive sentences for the violations of § 832(a) and § 1447(a) without suffering a deprivation of his constitutional rights under the Fifth and Fourteenth Amendments.

The petitioner's writ of habeas corpus will be granted unless he is resentenced by the State within the time stated in the accompanying order.

---

7. It must be emphasized, of course, that in combination with most felonies, a separate count under § 1447 would not pose double jeopardy problems because mutually exclusive elements in § 1447 and the underlying felony would exist. For this reason, the two counts of § 1447, for which petitioner was convicted and sentenced, that correspond to the conspiracy and murder counts are constitutionally sound.

8. By opinion of February 2, 1979, the Supreme Court of Delaware has since held, however, that an accused may not be convicted and sentenced of both § 1447 and § 832, although it formed this conclusion through statutory construction of Delaware law without reaching the constitutional issue. *Davis v. State,* 400 A.2d 292 (Del.Supr.1979).