485 A.2d 63

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Enrique TORREZ.**

Superior Court of Pennsylvania.

Argued March 14, 1984.

Filed Nov. 30, 1984.

Wieand, J., concurred and filed opinion.

Cavanaugh, J., concurred in the result.

Marianne E. Cox, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Karl Baker, Assistant Public Defender, Philadelphia, for appellee.

Before CAVANAUGH, WIEAND and CIRILLO, JJ.

CIRILLO, Judge:

The Commonwealth appeals from an order granting appellee's post-trial motion in arrest of judgment and discharging him. We are called upon to determine whether discharge was the proper remedy for the Commonwealth's failure to conduct a court-ordered pre-trial lineup. We conclude that such a remedy was not appropriate, and accordingly reverse the order of the trial court.

Appellee Torrez was charged with robbery and related offenses stemming from an incident that occurred in Philadelphia on August 22, 1980. At about 2:00 p.m. on that date, Confesor Rodriguez, a bill collector for a furniture store, observed Torrez and another man sitting on a stoop on Stella Street. Rodriguez went into a building to make a collection; when he came out Torrez and the other man had

moved to another step closer to Rodriguez. As Rodriguez walked by, the two men accosted him and Torrez held a knife to his back and demanded money. Rodriguez was taken into a nearby abandoned house, bound and gagged, and $1300 taken from his pockets. The robbers then escaped in Rodriguez's car.

Torrez was not apprehended immediately. Some months later, Rodriguez spotted Torrez at least half a dozen times on the streets of the city, and alerted a Philadelphia police detective. On October 17, 1980, Rodriguez was shown a photographic array at the Detective Division. Rodriguez identified a photograph of Torrez as that of his attacker. Torrez was arrested and charged with the robbery.

At a preliminary hearing on May 27, 1981, Rodriguez told the court that he had heard that one of his assailants was dead. Based on this representation, Torrez's counsel requested a lineup. Judge Francis P. Cosgrove of the Philadelphia Municipal Court thereupon continued the preliminary hearing and ordered that a lineup be held.

On the date scheduled for the lineup, Lieutenant Margolis of the Philadelphia Police Department refused to conduct a lineup with the defendant. On June 16, 1981, Municipal Court Judge Thomas J. McCormack convened a hearing on a second defense request for a lineup. At that hearing, the prosecutor told Judge McCormack that the scheduled lineup had not been held because Torrez had substantially altered his appearance by shaving his head and mustache. Judge McCormack denied the request for a lineup.

The continued preliminary hearing was held on July 27, 1981. At the hearing Rodriguez identified Torrez, and Torrez was bound over to stand trial on charges arising from the robbery.

Torrez filed pre-trial motions to suppress the photographic and preliminary hearing identifications and to dismiss the charges, on the ground that the Commonwealth had disobeyed Judge Cosgrove's order to conduct a lineup. The Honorable Michael E. Wallace of the Philadelphia Court of

Common Pleas heard the defense motions on October 23, 1981. Judge Wallace specifically found the following:

Based upon the facts presented by the Commonwealth, the Court concludes there was a sufficient opportunity on the part of the victim to observe the defendant during the commission of this crime.

There was a subsequent opportunity on at least half a dozen occasions for the victim to actually physically observe the defendant.

The photo identification as presented by the Commonwealth, in conjunction with the stipulation, does not appear to this Court to have been presented in any suggestive manner.

As to the identification at the preliminary hearing, while all in-court identifications are somewhat suggestive and require a test as to whether or not there is a substantial likelihood of misidentification—in this case, with the victim's prior opportunities to observe the defendant during the crime, as well as the opportunity to observe the defendant on the street on a number of occasions, there was an unlikelihood that this particular identification at the preliminary hearing was substantially suggestive.

N.T. 10/23/81 at 49–50.

The defendant's pre-trial motions were denied, and the case proceeded directly to a waived jury trial before Judge Wallace, who found Torrez guilty of robbery, theft, simple assault, conspiracy, unauthorized use of an automobile, and possession of instruments of crime (two counts).

The defendant filed post-trial motions, again raising the Commonwealth's failure to provide the court-ordered lineup. Upon reconsideration of his earlier ruling, Judge Wallace held that the Commonwealth's failure to conduct the lineup warranted dismissal of the charges against the defendant. Consequently, Judge Wallace granted the defendant's motion in arrest of judgment. This appeal followed.

Our appellate courts have not before addressed the consequences of a Commonwealth failure to conduct a court-or-

dered pre-trial lineup. Nevertheless, we believe the decision of the trial court to grant the extraordinary remedy of discharge in this case was clearly erroneous.

*Commonwealth v. Sexton,* 485 Pa. 17, 400 A.2d 1289 (1979), provides the primary support for our holding. There the trial court had denied a defense request for a pre-certification hearing lineup. At the certification hearing, the victim encountered the defendant for the first time since the happening of the crime, and positively identified him in court as the man who had robbed the victim's store. The Supreme Court held that under the circumstances the trial court's failure to grant the requested lineup was an abuse of discretion.

The Court next had to decide the appropriate remedy for the court's erroneous denial of the lineup request.

Where it is shown that his decision is without justification and that the accused has been substantially harmed thereby, it is incumbent upon the reviewing court to provide a remedy commensurate to the harm sustained by the party receiving the adverse ruling.

... Although we agree ... that ... exclusion of the identification evidence was inappropriate, it does not follow that this determination forces the conclusion that no other remedy is available. *Since we have concluded that the identification was admissible, to exclude it because of the court's abuse of discretion in denying the request for a lineup would be punitive rather than remedial.* It is, therefore, necessary first to examine the nature of the injury occasioned by the improper ruling before attempting to fashion an appropriate remedy.

The purpose of permitting a lineup identification under circumstances such as those presented here is to provide a setting which is less suggestive than the one-on-one confrontation provided by an in-court identification. By denying this request, appellee was prevented from having the witness attempt to identify him in a more objective setting and, consequently, appellee lost the possibility that under such circumstances either an identification

could not have been made, or that it might have been made with apparent uncertainty or hesitancy. Even if the results of such procedure had been favorable to the accused, the Commonwealth would not have been prevented from introducing a subsequent in-court identification. At best, the evidence concerning the lineup could have been used to challenge the weight to be given the subsequent in-court identification .... *We, therefore, are of the view that the harm in this case would be cured if the finder of fact hearing the cause is advised that appellee had been denied the opportunity for a more objective identification and for that reason the subsequent less reliable identification could be viewed with caution.*

... In our instant decision, we are merely utilizing this ... procedure to make the jury aware that the appell[ee] sought and was denied an opportunity for an identification procedure in a more objective setting than the one from which the identification introduced at trial emanated.

....

In short, the complained of injury is the denial to the accused of the possibility of evidence which could have been used to challenge the credibility of the subsequent in-court identifications. To exclude either or both of the in-court identifications, as suggested by the majority of the Superior Court, would be unduly harsh and out of proportion to the injury sustained. The doctrine of exclusion, wherein evidence which is otherwise relevant and competent is not admitted, is premised upon the impropriety of governmental action in obtaining that evidence. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Here, there was no governmental impropriety in securing this identification testimony, thus, there is no justification for the application of an exclusionary rule. We are satisfied that the remedy we have suggested adequately redresses the harm that was occasioned by the improper ruling.

618

The Order of the Superior Court is reversed; the judgment of sentence is reversed and a new trial is awarded. 485 Pa. at 24–26, 400 A.2d at 1292–94 (emphasis added).[1]

We are aware, of course, that *Sexton* dealt with trial court error in refusing to order a lineup, whereas here the prosecution failed to comply with a court order to afford Torrez a lineup. However, we see no reason why the remedy for the denial of a lineup should vary depending on whether it was court error or prosecutorial misconduct that led to the denial. In both instances, the injury to the defendant is the same: he is irrevocably denied an opportunity to test the reliability of witness identification in an objective pre-trial setting.

However, we must further take note of the fact that the denial of a lineup to Mr. Torrez could not have caused him the type of prejudice shown in *Sexton*. There the trial court's failure to order a lineup completely deprived Sexton of any opportunity for an objective, out-of-court confrontation with his accuser. In fact, the first post-incident encounter between accused and accuser took place in the suggestive setting of a pre-trial certification hearing. In contrast, here Rodriguez identified Torrez in the relatively unsuggestive context of a pre-trial photographic array, and in the totally unsuggestive circumstances of seeing Torrez numerous times on the streets of Philadelphia. Given the number and reliability of the pre-trial out-of-court identifications, we undoubtedly would have found no abuse of discretion had Judge Cosgrove originally denied appellee's request for a lineup rather than granting it. *See and compare Commonwealth v. Brown,* 302 Pa.Super. 391, 448 A.2d 1097 (1982); *Commonwealth v. Davis,* 293 Pa.Super. 447, 439 A.2d 195 (1981); *Commonwealth v. Walker,* 275 Pa.Super. 311, 418 A.2d 737 (1980); *Commonwealth v.*

---

1. Although this was the holding of only three of the five justices who heard the case, Justice Roberts, in dissent, also accepted the view that a new trial was an appropriate remedy in the case. Justice Roberts, however, found that the identification of the defendant at the certification hearing was unduly suggestive, and would have remanded for a hearing, with the grant of a new trial conditioned on a finding that the victim's identification of the defendant at trial was "tainted" by the suggestive pre-trial encounter.

*Guess*, 266 Pa.Super. 359, 404 A.2d 1330 (1979). Additionally, Judge Wallace later specifically found that the one-on-one confrontation at the preliminary hearing was not substantially suggestive. Torrez therefore had the benefit of fair identification procedures which were totally absent in the *Sexton* case.

We find that the remedy prescribed in *Sexton*, a new trial with cautionary jury instructions to the effect that the defendant was denied a pre-trial lineup, is inapplicable to this case. The case was tried non-jury. The fact-finder, Judge Wallace, was fully aware that the Commonwealth had failed to conduct a court-ordered pre-trial lineup. Nevertheless, he had found the proposed identification testimony reliable and admissible, and his conclusion is amply supported in the record. *See Commonwealth v. Silver*, 499 Pa. 228, 452 A.2d 1328 (1982). After hearing the evidence at trial, including the properly received identification testimony of the victim, the court was convinced beyond a reasonable doubt that Torrez was the perpetrator of the robbery. In these circumstances, we hold that the verdict need not be disturbed notwithstanding the Commonwealth's failure to afford the pre-trial lineup.[2]

2. An issue in this case which we find we need not address is whether the Commonwealth was justified in refusing to go through with the lineup. It will be remembered that the asserted reason for the refusal was the defendant's behavior in shaving his head and mustache. Appellee argues that the Commonwealth has waived the right to rely on this behavior to justify its failure to obey Judge Cosgrove's order, since the claim was abandoned at the hearing on the motion to arrest judgment. The waiver issue is irrelevant, since our holding stands regardless whether the Commonwealth, instead of unilaterally cancelling the lineup, should have sought an order from Judge Cosgrove or a judge of superior jurisdiction to reverse the lineup order in light of changed conditions.

Although we find the Commonwealth's motive for calling off the lineup to be immaterial to our holding that discharge was not an appropriate remedy, we do not mean to suggest that Commonwealth officers may with impunity refuse to follow court orders to conduct lineups whenever they feel that the defendant is trying to take unfair advantage of the procedure. For, on the one hand, officers who violate court orders risk being held in contempt. On the other hand, faced with a Commonwealth refusal to conduct a court-ordered lineup, a defendant may always vindicate his personal right to the lineup by asking the court to directly order the responsible Commonwealth officer to proceed with the lineup on pain of having identification testimony excluded at trial should the officer fail to comply. (We note that the defendant in this case did not seek immediate relief from the court for the Commonwealth's refusal to proceed). We therefore have no reservations that our decision today will in any manner encourage prosecutorial officials to disobey court orders to conduct lineups.

The trial court, in finding that discharge was the appropriate relief for the Commonwealth's failure to comply with the court's order to conduct a lineup, relied on the opinion of two justices of the Pennsylvania Supreme Court in *Commonwealth v. Wilder*, 461 Pa. 597, 337 A.2d 564 (1974) (Roberts, J., concurring and dissenting), and on the case of *United States v. Caldwell*, 156 U.S.App.D.C. 312, 481 F.2d 487 (D.C.Cir.1973). To the extent these cases conflict with the *Sexton* holding, we decline to consider them as controlling our disposition of this appeal. *See also Commonwealth v. Lark*, 316 Pa.Super. 240, 462 A.2d 1329 (1983) (release not appropriate remedy for failure to afford a lineup) (dictum).

Order in arrest of judgment of the Court of Common Pleas of Philadelphia County reversed; case remanded for disposition of the remaining issues raised by appellee's post-verdict motions. Jurisdiction relinquished.

WIEAND, J., files a concurring opinion.

CAVANAUGH, J., concurs in the result.

WIEAND, Judge, concurring:

I agree with the majority that the trial court erred in arresting judgment and discharging the defendant in this criminal case. I write separately only because I reach this conclusion by reasoning which does not rely upon or expand the holding of the Supreme Court in *Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979).

Enrique Torrez was tried non-jury; he was found guilty of robbery and related offenses. The trial court thereafter granted a motion in arrest of judgment and discharged Torrez because the police had refused to comply with a post arrest order directing a lineup. Although the victim had independently identified Torrez from persons walking on the street and also from a photographic array exhibited to

him by police, the police refused to subject him to a lineup after they learned that Torrez had materially altered his appearance by shaving his head and removing a mustache. Mistakenly, the police did not seek judicial relief from the earlier court order. The Commonwealth's failure to obtain judicial reconsideration was rendered immaterial, however, because defense counsel then went before the court with a renewed request for a lineup. This second request was denied by the court after it learned of the defendant's attempt to change his appearance.

The defendant next filed a petition requesting the court to suppress the victim's identification testimony because the police had failed to provide Torrez with a lineup "as ordered." After considering evidence of the victim's opportunity to observe the robber and also his prior identifications of Torrez, the hearing court concluded that there was not a substantial likelihood of misidentification because of the failure to hold a lineup. Consequently, the petition to suppress was denied.[1]

If the Commonwealth's conduct in refusing to hold a lineup was initially improper, that impropriety was corrected by the court's later orders. The lineup requirement was removed by the subsequent order denying a renewed defense request for a lineup. Moreover, as a result of a pre-trial motion to suppress the victim's in-court identification testimony, the court found an independent basis for the identification and held that the Commonwealth's refusal to hold a lineup was not an adequate basis on which to suppress the victim's identification testimony.

The trial court, after hearing all the evidence including the victim's identification testimony, found Torrez guilty of robbery. This verdict was based on evidence properly received. There was no need for jury instructions regarding the absence of a pre-trial lineup because the case was tried non-jury. The record, moreover, demonstrates clearly that the trial judge was aware of the circumstances surrounding

---

**1.** The court also denied a pre-trial motion to quash which Torrez filed because of the Commonwealth's failure to hold a lineup.

the failure to hold a post arrest lineup. Compare: *Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979).

Under these circumstances, the granting of a post-trial motion in arrest of judgment was erroneous. The evidence presented by the Commonwealth was sufficient to sustain the verdict of guilty. If the suppression court erred in refusing to suppress the victim's identification testimony and the verdict, therefore, was based on improper evidence, the remedy was a new trial. It was not appropriate to arrest judgment and discharge the defendant. See: *Commonwealth v. Nelson*, 320 Pa.Super. 488, 494, 467 A.2d 638, 641 (1983)(proper remedy where the erroneous introduction of evidence constitutes prejudicial error is "the grant of a new trial at which the evidence will be excluded").

For these reasons, I agree with the majority that appellee's discharge was improper and must be reversed. The motion for new trial averred various trial errors which, in appellee's judgment, required a new trial. These averments of error have not been decided by the trial court. Therefore, I agree that there must be a remand to determine the remaining issues raised by appellee's post-trial motions.